# Hall *v.* Haines, Appellant.

*Lease—Mines and mining—Lease of slate land—Royalty—Covenant running with land—Assignment of lease—Fraud—Legal fraud.*

Where a lessee of slate land assigns all his right, title and interest in the lease to another, and the assignee agrees to pay in addition to the royalty due the lessor under the lease, two per cent, on the product to the lessee, his heirs or sublessees, "so long as the said indenture of lease shall remain in force and effect," and the assignee subsequently notifies the lessor that he has lost money and cannot continue operations, and the lessor executes a new lease directly to the assignee at a reduced royalty, the original lessee after the abrogation of the first lease is no longer entitled to two per cent of the product. In such a case the covenant to pay the two per cent is a personal one, and even if it ran with the land it ran no longer than the continuance of the first lease. The action of the assignee in securing a new lease was not, under the circumstances, a legal fraud upon the original lessee.

Argued Dec. 9, 1909. Appeal, No. 171, Oct. T., 1909, by defendants, from judgment of C. P. Lehigh Co., Oct. T., 1905, No. 25, for plaintiff in case tried by the court without a jury in suit of Francis L. Hall v. Alvin S. Haines and J. Martin Koons, trading as the Provident Slate Company. Before RICE, P. J., HENDERSON, MORRISON, ORLADY, HEAD, BEAVER and PORTER, JJ. Reversed.

Assumpsit on account rendered.

The case was tried, TREXLER, P. J., without a jury under the Act of April 22, 1874, P. L. 109.

The facts are stated in the opinion of the Superior Court.

*Error assigned* was in entering judgment for the plaintiff.

*Frank Jacobs*, for appellants.—It is respectfully submitted that under and by virtue of the assignment the defendants were the absolute owners of the lease and leasehold and had the right to do with it according to their pleasure, assign it, sublet part or whole of the premises, retain possession of the lease and the premises, or surrender the same to the lessors: Smith v. Munhall, 139 Pa. 253; Weidner v. Foster, 2 P. & W. 23; Goss v. Woodland Fire Brick Co., 4 Pa. Superior Ct. 167.

The lessors had the right to enforce the covenant of forfeiture against the defendants (assignees): Stone v. Marshall Oil Co., 188 Pa. 602; Bartley v. Phillips, 179 Pa. 175.

The covenant for the payment of said two per cent to the plaintiff was personal to the defendants and was not a covenant running with the land: Fisher v. Guffey, 193 Pa. 393.

There is not a scintilla of evidence to sustain a finding of fraud, or bad faith: Young v. Oil Co., 194 Pa. 243; Pocono Spring Water Ice Co. v. American Ice Co., 214 Pa. 640.

*Jos. J. Brown*, with him *Edward Harvey*, for appellee.— It is very evident that the Provident Slate Company in procuring the agreement of rescission and abrogation and the option for a lease both dated April 16, 1904, and the lease dated December 31, 1904, from Gable acted in bad faith and was guilty of a legal fraud on the plaintiff: Johnson's App., 115 Pa. 129; Jackson v. Ludeling, 88 U. S. 616; Stone v. Marshall Oil Co., 188 Pa. 602; Mitchell v. Kintzer, 5 Pa. 216; Kintzer v. Mitchell, 8 Pa. 64;

Krupp v. Scholl, 10 Pa. 193; Vandever v. Baker, 13 Pa. 121; Jackson v. Summerville, 13 Pa. 359.

The forfeiture clause in leases is for the protection of the lessor and not of the defaulting lessee: Leatherman v. Oliver, 151 Pa. 646; Bartley v. Phillips, 179 Pa. 175; Wills v. Gas Co., 130 Pa. 222; Ogden v. Hatry, 145 Pa. 640.

The covenant to pay royalty was not a personal one but one that ran with the land. Lease from Gable to Hall provides that "said covenants, agreements and conditions shall be binding upon the parties hereto, their heirs, executors, administrators, assigns and sublessees:" Bradford Oil Co. v. Blair, 113 Pa. 83; Williams v. Short, 155 Pa. 480; Fennell v. Guffey, 139 Pa. 341.

OPINION BY MORRISON, J., July 20, 1910:

This is an action of account render tried before the judge of the court below without a jury and resulted in a judgment in favor of the plaintiff for $424.11, and the defendants appealed.

On December 23, 1899, John J. Gable and Mary E., his wife, executed and delivered a lease for about 100 acres of land to Francis L. Hall, the plaintiff. The purpose of the lease was to mine and dig for slate and remove and transport the same therefrom. In consideration thereof, said Hall agreed to pay rental or royalty to the lessors at the rate of eight per cent of the price which might be received by him, his heirs, assigns or sublessees. On the same day, by writing duly executed and delivered, Francis L. Hall stipulated: "I, Francis L. Hall, of the Borough of Slatington, Penna., hereby sell, assign, transfer and set over and convey unto William H. Kuntz, Alvin S. Haines and J. Martin Koons, partners, trading as the Provident Slate Company, their heirs and assigns, all my right, title, claim, demand and estate whatsoever in and to that certain indenture of lease dated the 23rd day of December A. D. 1899, between John J. Gable and Mary E., his wife, and myself, for the premises therein described, and which is attached hereto and made a part hereof

and all my right, title, demand and estate whatsoever in and
to said premises; to have and to hold the same unto the said
William H. Kuntz, Alvin S. Haines and J. Martin Koons,
their heirs and assigns forever.

"The said William H. Kuntz, Alvin S. Haines and J.
Martin Koons, partners, as aforesaid, yielding and paying
unto me and my heirs the sum or royalty of two percent of
the price received by the said William H. Kuntz, Alvin S.
Haines and J. Martin Koons, partners, for the product of the
said tract of land at the terms and in the manner stipulated
and agreed in said recited indenture of lease to be paid by me
unto the said John J. Gable and Mary E., his wife." This
assignment contains other stipulations, but they are not
material to the questions we are investigating.

We understand that the above assignment obligated the
assignees therein to pay the eight per cent royalty stipulated
in the original lease to Gable and wife and also to pay Hall
two per cent additional. On April 16, 1904, John J. Gable
and Mary E., his wife, and Alvin S. Haines and J. Martin
Koons, partners, trading as the Provident Slate Company,
entered into a written agreement for certain considerations
therein recited rescinding and abrogating and making of no
effect or force whatsoever the said lease of December 23, 1899.
Hall was not a party to this agreement. William H. Kuntz
died and all his interest in the lease had passed to Alvin S.
Haines. On the same day the same parties entered into a
written agreement granting to the said Alvin S. Haines and
J. Martin Koons, trading as the Provident Slate Company,
the option for nine months to lease the same premises de-
scribed in the lease of December 23, 1899, for the purpose of
mining, digging, taking out and transporting slate. The
royalty to be paid was reduced to seven per cent. The can-
cellation of the original lease and the granting of said option
were based on the representations of said slate company that
they could not operate the mine profitably paying the royalty
of eight per cent to the lessors and two per cent to Hall, and
that they had lost a large sum of money in carrying on the
business theretofore.

In pursuance of said option the said John J. Gable and Mary E., his wife, on December 31, 1904, executed a new lease to said Alvin S. Haines and J. Martin Koons, trading as the Provident Slate Company; the royalty reserved in this lease was seven per cent, and there were some other changes as to the price of the land in case the slate company elected to purchase it, etc., which were favorable to the latter.

It is conceded that all royalty due Hall, plaintiff, was paid up to the date when the original lease was canceled. The plaintiff took the position, and it was sustained by the court below, that the royalty of two per cent which was reserved in the assignment of the original lease by plaintiff to the defendants was a covenant running with the land and that the defendants were liable to account for and pay to him said royalty for all of the products of said quarry under the new lease of December 31, 1904.

The trial judge, in his opinion, says: "The only question in the case is, Did these various transactions divest Hall of his right to the two per cent royalty in the first assignment by him above referred to? The original contract was made with Hall. His liability upon his covenants would continue after the assignment of the lease. He had also a beneficial interest by reason of the two per cent reserved in the assignment. The liability of the assignee is different and the covenants of the lease are different and the covenants are only binding upon him while he holds the estate and enjoys its benefits."

But is the position taken by the trial judge controlling and do his reasons warrant the entry of judgment against the defendants, assignees of Hall? The judgment rests on two grounds substantially stated by the trial judge as follows: 1. That the two per cent to Hall was secured by a covenant running with the land, evidently meaning the covenant contained in the assignment of December 23, 1899, from Hall to the defendants. 2. That the surrender and abrogation of the lease of December 23, 1899, by the agreement of the lessor and the defendants of April 16, 1904, and the taking of the new lease of the same lands, dated December 31, 1904, was a

legal fraud on Hall, plaintiff.  To sustain the judgment at least one of the above reasons must be sound.

As to the covenant for the two per cent to Hall, we think it was purely a personal covenant and that it did not run with the land.  Hall had no interest in the leased land except what he acquired as lessee under the lease of December 23, 1899, and on the very same day he received that lease he sold and assigned it as follows: "All my right, title, claim, demand and estate whatsoever in and to said lease, and all my right, title, demand and estate whatsoever in and to said premises; to have and to hold the same unto the said William H. Kuntz, Alvin S. Haines and J. Martin Koons, their heirs and assigns forever."  It is agreed that Kuntz died and his interest in the leasehold became vested in Haines and that he and Koons are the defendants.  In consideration of said assignment, Hall took the personal covenant of the defendants as follows: "To pay unto me, my heirs and assigns, two per cent on the price received by them for the product of said tract of land, with all quarries opened or to be opened thereon to be operated by them, their heirs or sublessees so long as the said indenture of lease shall remain in force and effect."  The assigned lease contained provisions whereby it might be forfeited, and Hall, lessee, knew all about these provisions.  If he had not assigned the leasehold it will hardly be contended that he and the lessors could not have rescinded and abrogated the said lease of December 23, 1899, by such a paper as was executed between the lessors and the defendants on April 16, 1904.  If Hall could have abrogated said lease by agreement with the lessors, it is difficult to see why his assignees could not do the same.  They were the absolute owners of Hall's interest in the lease and leasehold, and what Hall could have done before parting with his title his assignees, the defendants, could do.  The assignment from Hall to the defendants contained no covenant that the defendants would operate under the lease and remove and sell slate for any definite period of time.  Hall was bound to know that if the lease was not operated according to its terms, the lessors could declare it forfeited.  When Hall parted with his interest vesting it in the defendants he

was bound to know that they might forfeit the lease, by failure to comply with its terms, and thus deprive him of the two per cent mentioned in his assignment. It is, we think, quite clear that the defendants were not bound to operate under the lease and mine and sell slate at a loss and pay Hall his two per cent. The defendants notified the lessors that they were losing money and could not operate the leasehold under the lease of December 23, 1899, except at a heavy loss, and that they would not continue to operate under said lease. This notice, without more, entitled the lessors to forfeit and declare at an end the said lease, and that is in effect what was done by the paper of April 16, 1904, between the lessors and the defendants. It can hardly be doubted that the lessors had the right to declare the lease forfeited on notice from the defendants that they could not and would not operate any longer thereunder: Stone v. Marshall Oil Co., 188 Pa. 602. We do not think that case supports the trial judge in his conclusions. The court there said: "It is contended that the lease of Grimes to the Marshall Oil Company of June 19th, 1888, was a declaration of forfeiture. That would be true if the lease was made for that purpose, and, ordinarily, there would be that presumption. A clause in that lease, inserted at the request of Grimes, before he would sign it, proves that he did not intend that lease as a forfeiture of the prior lease of Aiken. It was expressly provided that the Marshall Oil Company should stand between him and all who may have claims to this lease."

In the present case the lessors did intend to and as we think actually did forfeit and abrogate the lease of December 23, 1899. We have already seen that Hall had no covenant that the defendants would continue to operate the leasehold for any definite period of time, and that he had no right to ask them to operate it at a loss. But now for the argument's sake let us assume that Hall's two per cent covenant ran with the land and that the law raises an implied covenant that the defendants would operate the leasehold in a business-like manner so long as they held the lease, and will those considerations assist in sustaining the judgment? We think not, because such implied covenant was so long as the lease of De-

cember 23, 1899, remained in force and we have already seen that it was declared at an end by the lessors with the consent of the assignees of Hall who were the only persons having control over that matter.

The said lease being at an end and the defendants having paid Hall all money due him thereunder, he could not call on the defendants to pay him for slate sold under the lease of December 31, 1904. This is so even if Hall's covenant did run with the land, for manifestly it could only run so long as the lease and assignment thereof, which created it, remained in force.

We think Hall had no legal claim against the defendants in this case, and that his covenant did not run with the land: Fisher v. Guffey & Queen, 193 Pa. 393.

In our opinion, the following cases cited by counsel for plaintiff do not sustain the theory of the trial judge: Bradford Oil Co. v. Blair, 113 Pa. 83; Williams v. Short, 155 Pa. 480; Fennell v. Guffey, 139 Pa. 341. Those cases refer to covenants to pay royalty to a lessor.

We think the lessors had, under the notice received from Hall's assignees, the defendants, a clear right to declare the lease forfeited and ended, and that this was effectually done by the paper of April 16, 1904: Bartley v. Phillips, 179 Pa. 175; English v. Yates, 205 Pa. 106.

As to the question of fraud it is familiar law that fraud will not be presumed but it must be proved: Pocono Spring Water Ice Co. v. American Ice Co., 214 Pa. 640. The trial judge found no fraud in fact, and we do not think there is sufficient evidence in the record from which fraud in fact can be found. Young v. Forest Oil Co. et al., 194 Pa. 243, bears on this question.

We do not think the facts found by the trial judge, and any that could be found from the evidence, sustain the conclusion that the defendants were liable in this suit on the ground of legal fraud. The action of the lessors and the defendants in abrogating the first lease and making the second one on more favorable terms to the defendants is susceptible of an honest and fair business explanation, and it will not do to infer legal

fraud in such a case as a basis on which to found a judgment.

The assignments of error are sustained and the judgment is reversed.