## WELLS *v.* CLINE.

*Trusts—Fiduciary relation arises, when—Oil leasehold assigned by holder for benefit of both parties—Rights acquired by assignee antagonistic to assignor.*

1. Whenever one person confides his property to the dominion of another, and relies upon the integrity of such other to do nothing to impair the interests confided to him, a fiduciary relationship arises between such parties.
2. When the owner of an oil leasehold assigns the lease to another under an agreement that the property shall be developed for the benefit of both parties to the assignment, the assignee can not acquire rights therein antagonistic to his assignor, and when he acquires such rights a court of equity will charge the interests so acquired with a trust in favor of the assignor.

(Decided December 3, 1924.)

APPEAL: Court of Appeals for Hocking county.

*Mr. Edwin D. Ricketts* and *Mr. T. S. Hogan,* for plaintiff.

*Messrs. Pettit & Pettit* and *Mr. H. M. Whitcraft,* for defendant.

MAUCK, J. In October, 1921, Charles Shultz and J. W. Green had paper title to a tract of land in Hocking county. Some negotiations were had between them and one Fitzgerald and the plaintiff Wells, which on December 21, 1921, resulted in Shultz and Green executing an oil and gas lease to Fitzgerald, who on the following day assigned the same to the plaintiff. The lessors' royalty

[1] Fiduciary, 25 C. J. § 9; [2] Trusts, 39 Cyc. p. 182.

was to be one-eighth of the oil. This lease was to run for one year, and as much longer as oil or gas might be produced, a well was to be completed within the year, and a further stipulation read:

"Second party agrees to have well in active drilling operation within six months from date of lease, or the contract is null and void."

The lessors, Shultz and Green, the original lessee, Fitzgerald, and the defendant knew that the lessors had a defective title to the land demised. We are not satisfied that the plaintiff had such knowledge, but do not consider that a controlling fact. In March, 1922, the plaintiff and the defendant entered into a verbal arrangement for the development of the property by the defendant. Under this arrangement the defendant was to pay $300 to the plaintiff when a well was started, and to carry the plaintiff for a one-eighth interest in the production of the first well, and, if such well exceeded seventy-five barrels per day, pay plaintiff an additional $200. In all subsequent wells plaintiff was to receive a one-eighth interest and bear that proportion of the further costs of production. In April the defendant told the plaintiff that no drilling would be done until the title was perfected. Shultz and Green gave the plaintiff $150 to pay his expenses in trying to locate the owners of some outstanding interests. The plaintiff found the owners of the other interests and communicated the information to the lessors, who instituted an action to quiet title. This action to quiet title resulted in a decree establishing title to a one-half interest in the lands in the lessors, Shultz and Green,

and the other one-half in the Cleveland Trust Company. This finding was actually made in the Court of Common Pleas of Hocking County on August 25, 1922, but the journal entry was made on August 27. Before the entry was made the defendant had secured from Shultz and Green a new lease on their half interest at terms more liberal to the lessors than the terms in the original Fitzgerald lease. Before the entry was made the defendant had been negotiating with the Cleveland Trust Company for a lease on its undivided half, and in October he received a lease from that company. In March, 1923, the defendant sold his leases for $62,500. The plaintiff brought his action against the defendant for the one-eighth part of the purchase price and for an accounting. The facts thus detailed are not disputed; nor is it denied that in April, 1922, the defendant asked the lessors to give him a lease if they concluded not to extend the term of the plaintiff's lease. The plaintiff did not know that the defendant was attempting to get new leases until the latter actually had them.

Some sharp issues of fact arise in the case, but they are relatively unimportant. The principal question is whether the relationship thus existing between the plaintiff and the defendant was of that confidential character that precluded the defendant from abandoning the joint enterprise upon which he had embarked with plaintiff and entering the identical field for his sole benefit.

There has been considerable argument in the case on whether the facts make a partnership relation between the parties, and we are of the opinion that no such relationship existed. The duties

owed by the parties to each other, however, might be identical with the duties owed by partners to each other. Ordinarily those relations that we broadly describe by the term fiduciary are those that arise between husband and wife, co-tenants, principal and agent, partners, or some like relationship appropriately described by similar terms. While fiduciary duties arise in all these relationships, and many others, they do not arise because particular names are used to describe such relations. They arise rather because in those relations one party trusts his property or interests to the dominion of another and relies upon the integrity of that other to do nothing that will impair the interests confided to him. When this trust relation is found to obtain it matters not whether the parties can be described by any of the familiar terms referred to. It only matters that confidence has been reposed by one and dominion and power thereby acquired by the other. 25 Corpus Juris, 1118.

In the case at bar the plaintiff had a lease. The underlying title was not good, but the lease was a thing of value if it covered any interest in the property. 1 Thornton's Oil and Gas, Section 312. He placed it out of his power to develop the demised property by giving that exclusive right to the defendant. The defendant's duty was to develop the property. He, of course, had no duty to drill while the title was bad, but good faith required him to do nothing that would impair the plaintiff's rights in the property thus confided to him.

A recent case in North Carolina illustrates the

point. (*Lefkowitz* v. *Silver,* 182 N. C., 339, 109 S. E., 56, 23 A. L. R., 1491.) Two persons verbally agreed to buy a piece of real estate as tenants in common. Their agent entered into negotiations with the owner, but before these negotiations were completed one of the parties on his own negotiation bought the property and had it conveyed to himself and his mother. There was no partnership there. There was no tenancy in common, but only an agreement by which the parties might become tenants in common. The one party, however, who wanted a half interest in the property, relied upon the other cooperating with him to that end. The other party violated the confidence thus reposed in him. The Supreme Court of North Carolina held that the purchaser held in trust the one-half interest which his associate had expected to acquire, observing that such trust did not arise through any intention of the parties but by operation of law. We quote from the opinion, at page 348:

"It is entirely *in invitum,* and is forced upon the conscience of the malefactor, who will be declared a trustee because of his wrong or fraud, for the purpose of working out right and justice, or frustrating the fraud. It is otherwise defined as a trust not created by any words either expressly or impliedly evincing a direct intention to raise a trust, but by the construction of equity in order to satisfy the demands of justice; or a trust raised by construction of law, or arising by operation of law, as distinguished from an express trust; or one that arises when a person clothed with some fiduciary character, by fraud or otherwise, gains

some advantage to himself; or is such as is raised by equity in respect to property which has been acquired by fraud, or where, though acquired originally without fraud, it is against equity that it should be retained by him who holds the legal title.''

In that case the court restates the modes in which trusts are created as follows:

''1. By transmission of the legal estate, when a single declaration will raise the use or trust.

''2. By a contract based upon valuable consideration, to stand seized to the use or in trust for another.

''3. By covenant to stand seized to the use of or in trust for another upon good consideration.

''4. When the court, by its decree, converts a party into a trustee on the ground of fraud.''

The party held to be a trustee in the case mentioned had confided to him no property to be used by him for another's benefit, so the court applied the principle laid down in the fourth proposition, finding that the purchase of the property by one of the associated negotiators was in effect a fraud upon the other. It is not necessary for us to go so far in the case at bar. This is a more clean-cut trust, because the facts established bring the case within the third proposition quoted. Here the defendant became possessed of a lease in trust for the plaintiff and for a good consideration, and a trust resulted in favor of the plaintiff by reason thereof.

In *Akin* v. *Marshall Oil Co.*, 188 Pa., 602, 41 Atl., 748, the Supreme Court of Pennsylvania had before it the case of a lessee who had sublet part of his

leasehold, the sublessee covenanting to pay the royalty due the lessor under the original lease and additional like royalty to the lessee. Subsequently a right to forfeit the lease accrued in the lessor, but the latter did not exercise his right. At this juncture the sublessee took a lease from the lessor, thus freezing out the original lessee. This, said the court, was a legal fraud on the lessee, to obviate which equity would intervene. A paragraph of the syllabus reads:

"Plaintiffs leased oil and gas lands from the owner, and afterward sublet a portion of it to an oil company, which agreed to drill two wells, and pay plaintiffs one-fourth of the profits from them. After completing one well, the sublessees procured a lease direct from the owner, which did not require two wells, or payment of royalties. *Held,* that the second lease was a fraud on plaintiffs."

In Tiffany & Bullard on Trusts and Trustees, at page 152, the general principle is thus laid down:

"It is a rule which applies universally to all who come within the principle, which is, that no person shall be permitted to purchase an interest in property and hold it for his own benefit, when he has a duty to perform in relation to such property, which is inconsistent with the character of a purchaser on his own account, and for his individual use."

The best exposition of the equitable principle involved is made by Judge Sanborn in *Trice* v. *Comstock,* 121 Fed., 620. It is true that that case involved the relation of principal and agent, but the court bases its decision upon grounds broad enough to cover the instant case. The syllabus in that

case is accepted by us as the rule in fixing a trust relation and is squarely applicable to the case at bar. The syllabus reads:

"(1) Wherever one person is placed in such a relation to another by the act or consent of that other, or by the act of a third person, or of the law, that he becomes interested for him, or interested with him, in any subject of property or business, he is in such a fiduciary relation with him that he is prohibited from acquiring rights in that subject antagonistic to the person with whose interests he has become associated.

"(2) A violation of this inhibition, and the acquisition by one of the parties, by means of interest or information acquired through the fiduciary relation, of any property or interest which prevents or hinders his correlate in accomplishing the object of the agency, charges the property thus acquired with a constructive trust for the benefit of the latter, which may be enforced or renounced by him at his option."

It accordingly follows that when the defendant, entrusted as he was with the plaintiff's interest in the leasehold, secretly negotiated with the owners and obtained from them a leasehold in his own name, and to the exclusion of the plaintiff, he violated his trust and the new lease became impressed with a trust in favor of the plaintiff.

Due consideration has been given to the other features of the case, but they are not important. It may or may not be true that Shultz and Green could have declared the plaintiff's lease void and have ousted him on June 21. Sufficient to say that they did not. It may or may not have been

true that the plaintiff could have secured an extension or renewal. To say that he could not conceivably have done so would stamp the lessors with base ingratitude. Anyhow, he was entitled to his chance without any competition from the defendant.

The plaintiff is entitled to a decree. If counsel are in dispute as to the amount, they will be further heard on that phase of the case.

*Decree for plaintiff.*

MIDDLETON, P. J., and SAYRE, J., concur.